Elwyn White Tomlinson v. Commissioner. Elwyn White Tomlinson and Kate Palmour Tomlinson v. Commissioner.
Tomlinson v. Commissioner
Docket Nos. 10449, 10450.
United States Tax Court
1951 Tax Ct. Memo LEXIS 113; 10 T.C.M. (CCH) 828; T.C.M. (RIA) 51359; August 31, 1951
*113 Upon reconsideration of the issues in these cases in the light of Commissioner v. Culbertson, 337 U.S. 733, we reaffirm our previous conclusions; distinguishing Ginsburg v. Arnold, 185 Fed. (2d) 913; Joseph Middlebrook, Jr., 13 T.C. 385; and Edward A. Theurkauf, 13 T.C. 529. John L. Westmoreland, Esq., 815 Wm. Oliver Bldg., Atlanta, Ga., Frederic D. Dassori, Esq., and D. R. Bramwell, Esq., for the petitioners. R. H. Transue, Esq., for the respondent. RICE
Supplemental Memorandum Findings of Fact and Opinion RICE, Judge: On January 12, 1949, we entered our Memorandum Findings of Fact and Opinion in these consolidated cases, and on March 30, 1949, we entered our decisions therein [. Thereafter, petitioners duly prosecuted a petition for review to the United States Court of Appeals for the Fifth Circuit [, which remanded the cases to us "for further proceedings in conformity with the opinion of the Supreme Court in the Culbertson case [ with the right in either of the parties to offer such further or additional evidence *114 and take such further or additional positions as may be appropriate in the light of that opinion." Pursuant to the mandate of the Fifth Circuit, and an order of this Court dated October 19, 1950, a further hearing was had on November 29, 1950. At this hearing additional testimony and documentary evidence were offered by and received from the petitioners, after which we fixed the time for filing briefs and reply briefs by each party. Further proceedings having been had in accordance with the mandate of the Court of Appeals, and the positions of the parties having been further stated in their briefs in the light of , we make the following. Supplemental Findings of Fact During the taxable years 1940, 1941 and 1943 Elwyn W. Tomlinson and Kate P. Tomlinson did not, in good faith and acting with a business purpose, really and truly intend to join together, as partners, in the present conduct of the enterprise known as Capital Automobile Company. The income of the petitioners, business and otherwise, was properly accounted for on a calendar year basis rather than on the fiscal year basis used by Capital Automobile Company. *115 The deficiency determined for the taxable year 1940 is not barred by the statute of limitations. Opinion In this supplemental report we have found as a fact that petitioners did not really and truly intend to form a partnership for the present conduct of a business enterprise. This finding is made in the light of the Culbertson case, supra, and after full consideration of all the facts and circumstances surrounding the creation and operation of the alleged partnership. The Culbertson case lists the agreement of the parties as one of the facts and circumstances to be considered in determining the question of intent. The agreement states that the assets of the business were contributed 43/85ths by the husband and 42/85ths by the wife. But the facts and circumstances which preceded the acquisition by the wife of her stated share of the business assets are important and informative. Elwyn acquired Motors Holding Class B stock by using $84,600 of his dividends and bonuses and $400 from petitioners' joint checking account. The only claim Kate had on any of these shares is that she saved the money from Elwyn's earnings that went into the joint account. She had nothing to do with earning *116 the dividends and bonuses, or with earning the money deposited in the joint checking account. In order to get a 42/85ths interest in the assets into Kate's hands Elwyn transferred an undivided 21/85ths interest therein to her and reported the transfer as a gift. At the same time he transferred another 21/85ths interest in the assets to her and took back a promissory note for $21,000 which she ultimately paid out of the earnings of the business. Elwyn testified that, except for Kate's claimed interest in the $400 of the original investment, "she never actually earned any money herself that was put into the business." The assets which Kate contributed, therefore, did not originate with her notwithstanding the statement in the agreement that she contributed 42/85ths of the assets. Actually all of the assets she allegedly contributed were available to and were used in the business before she executed the agreement. The presence or absence of a capital contribution by Kate is a significant test of whether the parties intend to create a bona fide partnership. , (1949), on appeal CA-9. The agreement gave "complete direction and control *117 of the management and conduct of the business" to Elwyn. Petitioners explain that this provision was written into the agreement to protect Elwyn in case anything happened to Kate, who was in "just fair" health at the time. Kate testified that Elwyn wanted complete control of the business and she wanted him to have it because "I knew I wasn't able to come down there and manage it myself, or help at the office either." Kate also testified that she continued to be in poor health until about October or November 1941, some four or five months after their third child was born. Elwyn testified that there was nothing for Kate to do during 1942 and 1943 when the business was that of servicing of cars, and he worked on the service floor in order to reduce expenses. The parties to the agreement never intended or contemplated that Kate would actively participate in the business. Elwyn's statements on Kate's participation are enlightening. On direct examination he was asked: "Q. Did Mrs. Tomlinson actually take an active part in the management of the business by coming down to the place of business and assist in the running or operation of the business after the formation of the partnership? *118 "A. Very rarely. "Q. Very rarely? "A. At the place of business." On cross-examination Elwyn testified: "Q. Did she ever contribute any substantial services to the business? Did she go to the business and behind a desk or do any work there? "A. No sir, Mr. Potter. She used to come down occasionally and talk things over and every night she wanted to know what was done and I talked to her about everything mostly at night time because she wasn't physically able to come down to the business regularly." Elwyn also testified that Kate had no business activity or background, never having been gainfully employed, and that they were married when she finished college. Petitioners produced two witnesses connected with the General Motors organization at the second hearing. Their testimony was offered for the purpose of establishing that had Elwyn died, Kate would have retained the franchise. Both witnesses agreed that they would recommend Kate for consideration providing a general manager was appointed that they thought could replace Elwyn in the actual operation of the business. Both witnesses testified that while they understood Kate was a partner in the business they never discussed *119 business matters with her. The testimony of each witness substantiates our holding that Elwyn operated the business and earned the income in question regardless of the formalities used to create a partnership. In our previous opinion we discussed Kate's control of her share of the business income and the purposes for which it was used. There is little that we can add thereto, even in the light of the Culbertson language that whether a party "is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise." In our opinion Kate was a passive rather than an active participant in the enterprise; she was Elwyn's marital partner, not his business partner. Elwyn said as much when he testified as follows: "Q. You have really considered you and your wife have been partners all your life? "A. That's absolutely correct." Petitioners rely upon (C.A. 5, 1950), , and . The Ginsburg case involved a family partnership of husband, wife and two children, one of whom *120 was a married daughter. The marital community deeded a 15 per cent interest in certain properties to each of their children, reporting the transfers as gifts. The four individuals then formed a partnership. The husband - father was made general manager at a salary of $10,000 per annum and agreed to devote his entire time and attention to the business. When a third child reached 19 years of age, approximately two years later, she was given a 15 per cent interest in the business assets by the marital community which she contributed as her capital share in the partnership. The firm then had three children with a 15 per cent interest each and the marital community of husband and wife with a 55 per cent interest. The parents also made gifts of other property to the children, the value of which was greater than that of the business assets given them. These other properties were separable from the business, and could easily have been withheld by the children when the partnership was formed. Realizing that these latter properties would be subject to the liabilities of the partnership the children, of their own free will, contributed them to the partnership capital. The Commissioner recognized *121 the validity of the partnership as to these assets and taxed the income therefrom to all the partners in accordance with their respective interests. In recognizing the validity of the partnership the Court of Appeals stated: "* * * In determining the good faith of the transaction, we think it highly significant that the Commissioner recognized the validity of the partnership for tax purposes as to these other assets. If the partnership was valid as to these other assets, it should be valid as to all assets." We also note that the Ginsburg case was originally decided in favor of the , (C.A. 5, 1949), but that after the death of the author, the Court of Appeals vacated its opinion and reversed and remanded the case to the lower court for further consideration, in the light of the Culbertson case, supra, that the lower court rendered substantially the same judgment that it rendered on the first trial, and that the present decision of the Court of Appeals is by a divided court. This history of the litigation in the cited case weakens its authority. And in addition there is a clear factual distinction between the Ginsburg case *122 and the present case. In their brief petitioners state "The sigle factor which distinguishes the present case from , and , is that the formal transfer of an interest to Kate Tomlinson occurred on the same day as the formality of signing the partnership agreement." This statement is arresting in view of our understanding of the Middlebrook and Theurkauf opinions. Middlebrook, like Tomlinson, handled a General Motors automobile. Like Tomlinson, he and his associates bought Class B stock of the operating company from General Motors Holding Corporation which had caused the operating company to be formed. In May 1937 Middlebrook, Harry E. Brown, and Middlebrook's wife were the directors and officers of the operating company. By May 1938 all Class B stock had been acquired from General Motors Holding Corporation and was owned by Middlebrook and Brown, 455 shares and 45 shares, respectively. In May 1938 the salary of the secretary-treasurer, held by Middlebrook's wife, was fixed at $400 per month. In July 1938 Middlebrook gave his wife 199 shares of Class B stock. On March 8, 1939, he gave her 1 additional share and sold Brown *123 5 shares, so that the outstanding corporate stock at March 15, 1939, was owned: Middlebrook, 250 shares; his wife, 200 shares; and Harry E. Brown, 50 shares. On March 15, 1939, Middlebrook, his wife and Brown dissolved the corporation and formed a partnership, to which they transferred the assets received from the corporation. Middlebrook's wife at first refused and was reluctant to join in the formation of a partnership because of the risk involved and her expected inheritance of a substantial estate. She finally consented to join after it was pointed out to her that the risks could be minimized by carrying insurance of various kinds and by careful management of the business. Middlebrook's wife kept and used the partnership earnings distributed to her, signed checks for the firm, executed contracts, transferred title certificates to cars and signed leases and renewals. Her further participation in the operation of the partnership is shown in the following paragraph taken from our findings of fact in the Middlebrook case, (: "Petitioner's wife had a desk and telephone at the place of business of the company. Some weeks she would be in the office every *124 day and some weeks two or three half days a week, and such activity continued until about May 1940, when her husband was taken ill. During the period 1942 to 1945, when new cars were not available, petitioner's wife, like himself, was largely concerned only with the general policies of the business and spent but little time in the office. Petitioner's wife was consulted and participated in discussions with respect to the policies of the business, and, in some instances, the partners accepted her views. After petitioner's wife became secretary-treasurer of the corporation, and continuing into the partnership until May of 1940 and shortly thereafter, she handled the advertising for the service department, she was consulted with respect to personnel matters and persuaded her partners to accept her choice of certain key personnel and to accept her views with respect to the treatment of employees, such as providing vacations with pay and Christmas bonuses. When the manufacture of new cars for general civilian use was discontinued by General Motors Corporation due to the war, the petitioner and Brown thought it advisable to discontinue the business, while petitioner's wife, on the other *125 hand, urged that they continue in business. Her views were accepted and her judgment was vindicated by the successful results of operation during the war years. When the other partners were unable to obtain a satisfactory lease for the main building occupied by the partnership, petitioner's wife handled negotiations with the landlord and obtained results that saved the partnership from $3,000 to $4,000 a year. Prior to her marriage petitioner's wife had some business experience, having been employed as a secretary to one of the editors of Cosmopolitan Magazine. She rendered vital and important services to the partnership during the taxable years." The foregoing detailed statement of the wife's participation in the Middlebrook case serves to emphasize the merger participation of Kate Tomlinson in the creation and operation of the alleged partnership herein. In the Theurkauf case, supra, we found a full and complete gift of stock by taxpayer to his wife in 1936 and the organization of a partnership composed of husband, wife and two other individuals, the latter contributing no capital to the firm. The partnership agreement provided salaries to each of the partners except taxpayer's *126 wife, who was to receive no salary for she was not to render any services to the partnership. Taxpayer was named managing partner and upon dissolution was to liquidate the firm, paying salaries, the pro rata share of net income to each partner, and distributing remaining assets to taxpayer and his wife equally. This partnership lasted until 1941. It was then dissolved and a new partnership of husband, wife and one of the preceding partners was formed. The husband and wife contributed the net assets of the first partnership and the trade name and good will of the old partnership to the new. The new partnership agreement provided salaries for the working partners but none for taxpayer's wife, and provided for a smaller percentage distribution of profits to taxpayer and his wife with a corresponding increase in the distribution of profits to the third partner. We held that taxpayer and the other active partner were paid salaries commensurate with the services performed, that taxpayer's wife contributed half of the capital to the partnership organized in 1941, that it was recognized from the beginning that taxpayer's wife would render no services to the firm but contribute only capital, *127 and that the parties intended that she should be a member of the firm. We can not agree with petitioners that the single factor which distinguishes the present case from the Theurkauf case is that the formal transfer of an interest to Kate occurred on the same day as the formality of signing the partnership agreement. In the Theurkauf case we found that Theurkauf made a full and complete gift of property to his wife in 1936. We are unable to make such a finding in the present case. Theurkauf's wife invested her property in a partnership composed of four individuals in 1936, and reinvested it in a second partnership composed of three individuals in 1941. In both Theurkauf partnerships third parties agreed to and did accept the wife as a member of the partnerships. In the present case no third parties are involved. In both Theurkauf partnerships the active partners were paid salaries for their services and it was understood that Theurkauf's wife would render no services to the business enterprise. In the present case Elwyn received no salary although he operated the business and was responsible for its earnings. In the Theurkauf case the 1936 partnership was dissolved and the 1941 *128 partnership created for definite business reasons entirely dissociated from any tax purposes. Here, no valid business reasons have been shown justifying the formation of a partnership by Elwyn and Kate. She contributed no single asset, skill, or business experience that was not theretofore available to the conduct of the business. She did not agree to pay him a salary for any excess in value of his services over hers as was true in the Theurkauf and Middlebrook cases. It can not therefore be said as the Court of Appeals for the Fifth Circuit said in (June, 1951), that the agreement entered into by Elwyn and Kate Tomlinson was a fair arrangement that might have been made between any man and woman having no family relationship. It is inconceivable that Elwyn would have entered into this transaction with any one other than his wife or a member of his family. In view of those and other circumstances herein, we are reminded of the Fifth Circuit's language in the recent case of (C.A. 5, 1951), where, in speaking of a father and son arrangement in Texas, the Court said: "* *129 * * It is merely an arrangement for shoring up and expanding the family fortunes at the expense of the tax collector. "Looking at the case in this way, we can see at once our difficulties and the way out of them. Our difficulties come from overlooking, or rather from not according its true weight to, the family ties and interests. Our way out is in according them their true weight. "So proceeding, we will have no trouble in seeing that here is no business organization, no true partnership with the end and aim in view of creating and sharing business benefits and burdens. Here is a purely familial arrangement entered into not upon considerations of really shared business burdens and benefits but upon those of strengthening and extending the family fortunes and ensuring its continuing solidarity by reducing its tax burdens. It must, therefore, be truely said of it, here is no partnership; here is only a family scheme for tax avoidance by anticipatory assignment of income under the pretense of forming and conducting a partnership." After fully weighing and considering all the facts and circumstances herein, and petitioners' additional contentions and arguments in the light of the *130 Culbertson case, we reaffirm our previous conclusions. Petitioners' contentions are grounded mainly upon the creation of a valid partnership in Georgia and the absence of a specific finding as to the intent of the petitioners. That we did not entirely overlook these contentions in our original report is shown by the following language: "* * * We are satisfied that the husband executed all the legal formalities deemed necessary by his counsel and accountant in order to make his marital partner his business partner, but we are not satisfied that she contributed, or that it was intended that she should contribute, in any material way to the business." (Italics supplied) We are satisfied that what was there said is correct and we have found as a fact that petitioners did not really and truly intend to form a business partnership in which they shared the burdens and the benefits. We have reexamined our conclusion on the second issue in the light of petitioners' additional arguments, but we are not persuaded thereby. See ; , and . We have *131 also reexamined our conclusion on the statute of limitations issue, and we reaffirm our determination thereof Cf. , where we recognized the family partnership and refused to apply section 275 (c) of the Code. In view of the foregoing, our decisions, entered March 30, 1949, redetermining the deficiencies herein were proper; and since the mandate of the Court of Appeals did not vacate, reverse, or modify such decisions, they shall stand as entered.